IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **PRESIDIO, INC.,** *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | Case No. 2:21-cv-05779 |
| v. : | |
| : | Chief Judge Algenon L. Marbley |
| **PEOPLE DRIVEN TECHNOLOGY, INC.,** : | Magistrate Judge Elizabeth P. Deavers |
| *et al.*, : | |
| : | |
| Defendants. : | |

## OPINION & ORDER

This matter is now before the Court on Defendants' Rule 37(c) Motion to Preclude Plaintiffs from Relying on Untimely Disclosed Witnesses and from Presenting Evidence Regarding Untimely Disclosed "Trade Secrets" (ECF No. 157). This Court held an evidentiary hearing on the motion on May 16 and 17, 2023. For the reasons set forth more fully below, the motion is **GRANTED IN PART and DENIED IN PART**.

### I. BACKGROUND

This case arises out of allegations of trade secret misappropriation in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and the Ohio Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code § 1333.61 *et seq.*, brought by Presidio, Inc., Presidio Networked Solutions LLC, and Presidio Networked Solutions Group LLC (collectively, "Presidio" or "Plaintiffs"), against People Driven Technology, Inc. ("PDT"), and against Joseph Schaumleffel, Thomas Schlotterer, Jeffery Ely, and Michael Martin (collectively, "the Individual Defendants"). Plaintiffs also allege that PDT has violated the Lanham Act, Pub. L. 79-489, 60 Stat. 427 (1946) (codified as amended in scattered sections of 15 U.S.C.), and the Ohio

1

Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02 *et seq.*; that the Individual Defendants have committed breaches of contract; and that all Defendants are liable for unfair competition, unjust enrichment, and tortious interference with business relationships under Ohio common law. (*See generally* First Am. Compl., ECF No. 126).

The parties conducted fact discovery in this case through January 17, 2023. The initial deadline for fact discovery was set for September 2022; the deadline was extended three times—twice on joint motions from the parties, and once by this Court when it re-set the trial schedule in October 2022. During discovery, PDT produced approximately 93,000 documents directly to Plaintiffs. Of these documents, approximately 68,000 of the documents (~75%) were produced on or after December 6, 2022—*i.e.*, within the last six weeks before the close of discovery. During that time period, the parties also conducted 14 depositions. Additionally, in March 2022, the parties had agreed to a series of stipulated preliminary injunctions against Defendants, pursuant to which Vestige Digital Investigations, Ltd. ("Vestige"), was appointed as an independent, third-party forensics vendor; Vestige was tasked with conducting analysis and imaging of PDT's OneDrive cloud storage network and the personal devices of the Individual Defendants. (*See generally* Stipulated Prelim. Inj. at 2, ECF No. 44; Agreed Prelim. Inj. at 3, ECF No. 45). The OneDrive and devices were turned over to Vestige in late July and early August 2022, from which Vestige recovered about 500,000 documents. The documents were produced in full by Vestige to the parties by approximately late September or early October 2022. (*See* Evidentiary Hr'g, Pls.' Ex. 3 tab 9).

On January 13, 2023, Plaintiffs provided Defendants with amended initial disclosures under Rule 26(a), listing 25 "individuals likely to have discoverable information" that had not been previously disclosed by Plaintiffs in their initial Rule 26(a) disclosure, their first amended

disclosure, or in their responses to PDT's interrogatories. (*See* Defs.' Ex. 1 at 10–15, 17–19, ECF No. 157-1). All of the individuals are current or former employees of a Presidio entity. Then, on January 17, 2023, the last day of discovery, Plaintiffs submitted a supplemental response to PDT's interrogatories, in which they disclosed 117 alleged trade secrets for the first time (in addition to 481 alleged trade secrets previously disclosed). (*See* Defs.' Ex. 6 at 57–67, ECF No. 157-6). On May 2, 2023, Plaintiffs provided another supplemental response, in which they disclosed 52 more alleged trade secrets.

Defendants now move to preclude Plaintiffs from relying on the newly-disclosed witnesses and alleged trade secrets at trial, arguing that the disclosures are untimely under Rule 26(e) and that Rule 37(c) sanctions, in the form of preclusion, are therefore warranted. The motion was not addressed to the 52 alleged trade secrets disclosed on May 2, 2023; the parties presented argument and evidence on the timeliness of that set of alleged trade secrets during the evidentiary hearing.

## II. STANDARD OF REVIEW

Rule 26(a) sets forth an affirmative duty for each party to a case to disclose to the other parties "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses . . . ." FED. R. CIV. P. 26(a). This initial disclosure must be made within 14 days of the parties' Rule 26(f) conference. Recognizing, however, that litigants may uncover new information during the course of discovery that is relevant to the case, or new witnesses with relevant information, the Federal Rules do not require parties to rely solely on their initial disclosures. Instead, Rule 26(e) allows parties to supplement their initial disclosures "in a timely manner if the party learns that in some material respect the

3

disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." FED. R. CIV. P. 26(e)(1)(A). The meaning of "in a timely manner" is "not defined in the rule and must necessarily depend on the facts and circumstances of each case." *EEOC v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 795 (E.D. Tenn. 2016) (citation omitted), *aff'd*, 899 F.3d 428 (6th Cir. 2018). In general, "[p]arties should supplement disclosures and responses periodically in a fashion that will allow [the opposing party] to conduct meaningful discovery and avoid undue delay in the progress of [the] case." *Id.* (alterations in original) (internal quotation marks and citation omitted).

Where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The party moving to impose the Rule 37(c) sanction of preclusion bears the initial burden of demonstrating that the opposing party violated Rule 26(a) or (e). *See Nathan v. Ohio State Univ.*, No. 2:10-cv-00872, 2012 WL 5342666, at *4 (S.D. Ohio Oct. 29, 2012) (citation omitted). Once such a showing has been made, Rule 37(c) "mandates that a trial court punish a party for [the] violations . . . unless the violation was harmless or is substantially justified." *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (quoting *Vance v. United States*, No. 98-5488, 1999 WL 455435, at *3 (6th Cir. June 25, 1999)). The Sixth Circuit has adopted the five-factor test for determining when a violation is "harmless" or "substantially justified" first set forth by the Fourth Circuit: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the

4

evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)). These factors are not intended to be applied rigidly, but rather are to be considered within the broad discretion of the trial court. *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citation omitted).

### III. LAW & ANALYSIS

#### A. Alleged Trade Secrets

There are, in total, 169 newly-disclosed alleged trade secrets: 117 disclosed on January 17, 2023, the last day of discovery, in Plaintiffs' Second Supplemental Response to PDT's Second Set of Interrogatories; and 52 more disclosed on May 2, 2023, after the close of discovery, in the Third Supplemental Response to PDT's Second Set of Interrogatories. They can be categorized into five buckets, each of which the Court will discuss in turn.

*1. Alleged Trade Secrets Based on Documents Produced in February through May 2022*

The first category of alleged trade secrets are those that were first disclosed on January 17, 2023, and were based on documents produced by PDT directly to Plaintiffs on February 14, 2022, April 16, 2022, and May 20, 2022. These correspond to the alleged trade secrets listed as rows 1–76 on the January 17 Disclosure Spreadsheet provided by PDT. Defendants suggest that the disclosure of these alleged trade secrets between seven to 11 months after PDT had disclosed the underlying documents is patently untimely. (*See* Defs.' Reply Br. at 2–3, ECF No. 162). Plaintiffs, on the other hand, argue that the disclosures were timely because they were unable to corroborate the misappropriation of confidential information contained in those documents until they deposed nine PDT employees in December 2022 and January 2023. (*See* Pls.' Resp. in Opp'n at 12–13, ECF No. 161). But Plaintiffs were able to identify 481 alleged trade secrets in

5

their First Supplemental Response without issue; they have not put forward any explanation for why the majority of their alleged trade secrets did not require deposition testimony to identify but this subset did. In the absence of such an explanation, this Court is compelled to conclude that the disclosure of these 76 alleged trade secrets, nearly eleven months after the underlying documents were produced, was untimely.

But despite the untimeliness, the Court finds that the violation of Rule 26(e) was "substantially justified or is harmless" under the *Howe* factors. First, while it may be true that Defendants did not expect Plaintiffs to add new alleged trade secrets at the tail end of discovery, *see, e.g.*, *Bentley v. Highlands Hosp. Corp.*, Civil No. 15-97, 2016 WL 5867496, at *10 (E.D. Ky. Oct. 6, 2016) (noting that "the rules do not require parties to read minds"), all of the alleged trade secrets are based on documents produced by PDT. The cases cited by Defendants, on the other hand, uniformly discuss instances in which the movant was surprised by the eleventh-hour disclosure of information to which it had no knowledge or access. (*See generally* Defs.' Mot. to Preclude at 10–11, ECF No. 157) (collecting cases). The fact that the underlying substance of the untimely disclosure was not a surprise to Defendants mitigates the surprise of Plaintiffs' decision to disclose untimely.

Second, as to the "ability to cure" factor, Defendants suggest that any decision to reopen discovery would simply "reward [Presidio] for [its untimeliness] and suggest that deadlines bend to a party's will." (Defs.' Reply Br. at 14, ECF No. 162) (quoting *Bentley*, 2016 WL 5867496, at *11). But the primary harm Defendants allege is that the untimeliness prevented their experts from having sufficient time to review the alleged trade secrets for their reports, which were due on January 27. This assertion is undermined, however, by the fact that Defendants' expert, Stephen Buffo, did analyze all 117 alleged trade secrets first disclosed on January 17, 2023, in

6

his report.  (*See* Evidentiary Hr'g, Pls.' Ex. 4 tab 13).  Moreover, at the evidentiary hearing, another of Defendants' experts, Brandon Fannon, implied that he too could have timely reviewed and incorporated analysis of the allegedly untimely trade secrets in his report, but did not do so.  (*Cf.* Evidentiary Hr'g Tr. 125:14–126:13, ECF No. 236).  This factor weighs substantially in favor of denying Defendants' motion, especially as supplemental expert reports can be prepared to cure any prejudice, if necessary.

The third factor is neutral.  The untimely disclosure "disrupted" trial to the extent that the trial schedule has been reset to accommodate an evidentiary hearing and decision on the instant motion to preclude.  On the other hand, it was Defendants' motion that prompted the hearing and the reshuffling of deadlines.  The suggestion that the untimely disclosure deprived Defendants of an adequate opportunity to respond falls short when confronted with the reality that, as mentioned, their damages expert had no issue incorporating analysis of the untimely disclosures in his report.  *See also Bentley*, 2016 WL 5867496, at *10.

The importance of the evidence, the fourth factor, "can cut both ways."  *Bisig*, 940 F.3d at 220.  After all, "[t]he more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure."  *Id.* (quoting *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-cv-00150, 2017 WL 2295906, at *5 (E.D. Ky. May 25, 2017)).  Both Plaintiffs and Defendants agree that the new disclosures are important.[1]  (*See* Defs.' Reply Br. at 15, ECF No. 162).  While some courts have suggested that, where "evidence is so important to Plaintiff[s], [their] explanation for [their] failure to abide by . . . the Federal Rules of Civil

---

[1] During the evidentiary hearing, Defendants also argued and offered evidence that many of the alleged trade secrets involve duplicate files, are not confidential, or do not entail technical or specialized information that derives value from not being generally known.  That, however, goes to the merits of this case—*i.e.*, whether Plaintiffs identified legitimate trade secrets that Defendants have misappropriated—rather than to the merits of the motion under consideration.  In other words, whether Plaintiffs' newly-disclosed trade secrets are truly trade secrets does not affect this Court's analysis of the timeliness of the disclosure itself.

7

Procedure becomes even less satisfactory," *Etheridge v. E.I. DuPont de Nemours & Co., Inc.*, No. 14-cv-02443, 2015 WL 12516227, at *3 (W.D. Tenn. Oct. 14, 2015), this Court—in light of the "strong preference for trials on the merits in the federal courts"—concludes that the importance of the evidence favors Plaintiffs. *See Am. Nat'l Prop. & Cas. Co. v. Williamson*, No. 2:20-cv-00539, 2020 WL 7021421, at *1 (S.D. Ohio Nov. 30, 2020) (quoting *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986); *see also Bentley*, 2016 WL 5867496, at *11.

The final *Howe* factor considers Plaintiffs' explanation for the tardiness of their disclosure. As mentioned previously, Plaintiffs argue that they could not have identified the alleged trade secrets earlier because they did not know that the underlying documents had been misappropriated until the depositions of PDT employees in December 2022 and January 2023. (Pls.' Resp. in Opp'n at 19, ECF No. 161). But they do not explain how they were previously able to identify 481 alleged trade secrets without the depositions, or why this batch of alleged trade secrets required corroboration when the timely-disclosed alleged trade secrets did not.

Thus, the Court finds that the second and fourth *Howe* factors weigh in favor of Plaintiffs, the fifth in favor of Defendants, and the remainder are neutral. Given the lack of harm suffered by Defendants and the importance of the evidence, the Court **DENIES** Defendants' motion as to this set of alleged trade secrets.

#### 2. *Alleged Trade Secrets Based on Vestige Documents*

Eleven of the newly-disclosed alleged trade secrets are based on documents produced by Vestige, the third-party forensic vendor, from its analysis of the PDT OneDrive and the devices turned over by PDT employees. These are listed on the spreadsheet provided by PDT at rows 77–87. (*See* Defs.' Ex. 8, ECF No. 157-8). Although the OneDrive and devices were produced

by PDT to Vestige in late-July and early-August 2022, the evidence adduced at the hearing establishes that Presidio was not provided with the complete set of underlying documents from Vestige until late September, approximately 3.5 months before the close of discovery. (*See* Evidentiary Hr'g, Pls.' Ex. 3 tab 9). PDT suggests that Vestige completed production of the documents (and not just the file listings) to the parties earlier than that date, but has not provided sufficient evidence in support of that assertion. (*See* Evidentiary Hr'g Tr. 183:21–184:3, ECF No. 237). Under these circumstances, in which Presidio received nearly half a million documents from Vestige corresponding to the OneDrive and PDT employee devices (and a further 68,000 documents directly from PDT) in the last 3.5 months of discovery, it is understandable that Presidio would still be reviewing the documents and supplementing its list of alleged trade secrets until near the close of discovery. *See, e.g.*, *Ortega v. City and Cnty. of Denver*, No. 11-cv-02394, 2013 WL 1751944, at *2 (D. Colo. Apr. 23, 2013). Accordingly, the motion to preclude is **DENIED** as to this set of alleged trade secrets, because the Court concludes that their disclosure on January 17, 2023, was timely under Rule 26(e).

3. *Alleged Trade Secrets Based on Documents Produced on or after December 6, 2022*

The remaining 30 alleged trade secrets first disclosed by Plaintiffs on January 17, 2023, are based on documents produced by PDT on or after December 6, 2022—*i.e.*, within the last six weeks of discovery. During that period, PDT produced approximately 68,000 documents (approximately 75% of the total document production it provided directly to Plaintiffs). Presidio's review of these documents coincided with their review of the Vestige documents and the taking of a substantial number of depositions, the schedule for which was compressed in part due to the expedited nature of discovery in this matter. The Court therefore concludes that the

9

January 17 disclosure of these alleged trade secrets was also timely. *See Dolgencorp, LLC*, 196 F. Supp. 3d at 795–96. Defendants' motion is **DENIED** to this set of alleged trade secrets.

        4.        *Alleged Trade Secrets Identified in the Barnett Supplemental Report*

There are broadly two categories of alleged trade secrets disclosed by Plaintiffs on May 2, 2023. The first includes the 42 alleged trade secrets that were identified by Plaintiffs' expert, Alex Barnett, in compiling his supplemental expert report. The disclosure of these trade secrets nearly three months after the close of discovery was untimely. *See id.* at 795 ("Courts are likely to determine that a party violated Rule 26(e) when the party supplemented disclosures or responses after the discovery deadline in the case." (collecting cases)).

Despite the untimeliness, the *Howe* factors point narrowly in favor of allowing Plaintiffs to rely on and present evidence of these alleged trade secrets. Defendants are rightly surprised that Plaintiffs chose to supplement their interrogatory responses with additional alleged trade secrets months after the discovery deadline. But while, under normal circumstances, the second and third factors would point heavily in favor of precluding a months-late supplement, this case is somewhat different. After all, by the time Plaintiffs provided their Third Supplemental Response to Defendants' interrogatories on May 2, 2023, this Court had already stayed trial deadlines and indicated that it would continue the trial date. Further, the parties presented evidence and argument about these alleged trade secrets, in addition to the 117 alleged trade secrets discussed above, at the May 16–17, 2023, evidentiary hearing. Thus, the inclusion of the alleged trade secrets in this bucket would not cause any disruption to trial, and would not cause any prejudice that could not be cured in the same manner and on the same timeline as the other alleged trade secrets at issue.

10

Additionally, the Court finds Plaintiffs' explanation for its failure to disclose timely, the fifth *Howe* factor, compelling. Plaintiffs explain that this set of alleged trade secrets was identified through supplemental analysis conducted by their expert, Alex Barnett, of "artifacts" indicating use or access of confidential Presidio files by PDT employees. An "artifact," in this context, refers to "information that is left behind that . . . documents the user activity," akin to a "digital footprint." (Evidentiary Hr'g Tr. 108:9–15, ECF No. 236). The "artifacts" for the underlying documents of these alleged trade secrets were not produced by Vestige to Presidio until after the close of discovery. Presidio, in turn, had not requested the documents because they did not realize that they would need the "artifacts" until December 29, 2022, when PDT amended its initial Rule 26 disclosures; in the amendment, PDT expanded the scope of testimony of its forensic expert, Brandon Fannon, to include "the fact that files originating from Presidio were not accessed or used." (Evidentiary Hr'g, Pls.' Ex. 3 tab 30A). The change prompted Presidio to seek "artifacts" to show use or access of Presidio files—and, in the course of Barnett's analysis of the "artifacts," uncovered further alleged trade secrets.

Defendants do not deny that their amended disclosures, late in the discovery process, materially expanded the scope of Fannon's proposed testimony. Rather, Defendants suggest that Presidio's explanation is unavailing because Presidio, as the plaintiffs in this matter, bear an affirmative burden of proving misappropriation and thus should have realized the need to show use or access of the Presidio documents by PDT employees. (*See, e.g.*, Evidentiary Hr'g Tr. 201:5–12, ECF No. 237). But while Plaintiffs do bear the burden of proving misappropriation, they need not do so by adducing direct evidence of misappropriation—*e.g.*, improper use or access of confidential files—because the Sixth Circuit has held that misappropriation can be shown by circumstantial evidence. *See Stratienko v. Cordis Corp.*, 429 F.3d 592, 600–01 (6th

11

Cir. 2005); *see, e.g.*, *Radiant Glob. Logistics, Inc. v. Furstenau*, 368 F. Supp. 3d 1112, 1130 (E.D. Mich. 2019). Plaintiffs, of course, could certainly have sought the "artifacts" earlier in discovery and thereby uncovered these alleged trade secrets, especially since this is apparently the rare case where direct proof of use or access is available; there were no barriers preventing Plaintiffs from requesting the "artifacts" from Vestige. They chose not to do so. But the Court refrains from punishing Plaintiffs for not taking an action that they were neither required nor had a need to pursue until Defendants' own end-of-discovery disclosure compelled Plaintiffs to act.

Accordingly, because the fifth *Howe* factor favors the conclusion that Plaintiffs' untimely disclosure was "substantially justified," and because the ability to cure and substantial disruption to trial factors are tempered in part by changes already made to the trial schedule at the time of the untimely disclosure, Defendants' motion to preclude is **DENIED** as to the 42 alleged trade secrets identified through the Barnett supplemental expert report.

5. *Alleged Trade Secrets Identified from Vestige Analysis of the Faber Device*

The remaining ten alleged trade secrets disclosed on May 2, 2023, involve documents produced by Vestige from the laptop of Rudy Faber, a PDT employee. Defendants acknowledged at the evidentiary hearing that the laptop was not turned over to Vestige until after the close of discovery due to an oversight, and that the laptop should have been turned over (and therefore the documents within produced) earlier. (Evidentiary Hr'g Tr. 74:4–75:11, ECF No. 236). Because the delayed disclosure of these alleged trade secrets was due to delays in production attributable to PDT, the Court finds that the disclosure is timely and therefore **DENIES** the motion to preclude as to the alleged trade secrets found on the Faber laptop.

### B. Witnesses

Plaintiffs' Second Amended Rule 26(a) Initial Disclosures listed 25 additional witnesses who had not been previously disclosed as individuals with discoverable information. At the evidentiary hearing, Plaintiffs represented that they plan to call only five of those 25 at trial. (*Id.* 202:14–203:10). Accordingly, Defendants' motion is **GRANTED** as to the 20 that Plaintiffs do not plan to call. Of the remaining five—Robert Cagnazzi, Ben Dean, Jon Dewey, Justin Filia, and Dave Raglow—Defendants orally withdrew their objections to Filia and Raglow. (*Id.* 203:11–12). As such, the Court confines its analysis to Cagnazzi, Dean, and Dewey:

*Cagnazzi*. In the January 13, 2023, disclosure, Plaintiffs represented that Robert Cagnazzi, the CEO of Presidio, "may have discoverable information as to Presidio's acquisition of Netech, and related topics." (Defs.' Ex. 1 at 19, ECF No. 157-1). Presidio suggest that they added Cagnazzi as a potential witness after he was mentioned during the deposition of Justin Filia on January 6, 2023. (Pls.' Resp. in Opp'n at 8, ECF No. 161). It is difficult, however, to credit this explanation. Cagnazzi was mentioned during the Filia deposition only during a cursory exchange about matters unrelated to Presidio's acquisition of Netech. (*See* Deposition of Justin Filia ("Filia Dep.") 88:4–89:20, ECF No. 161-6). More fundamentally, there is no plausible reason why Presidio could not or should not have known that Cagnazzi, who negotiated and signed off on the Netech purchase, had discoverable information about that acquisition from the very beginning of this matter.

Therefore, the Court finds that Plaintiffs' disclosure of Cagnazzi as a potential witness on January 13, 2023, was untimely. As to the *Howe* factors, the importance of the evidence and ability to cure factors weigh heavily in favor of Plaintiffs. The CEO of one of the parties is, undoubtedly, highly significant and any prejudice can be cured by reopening discovery for the

limited purpose of deposing the new witnesses. *See Phillips v. Acacia on the Green Condo. Ass'n, Inc.*, No. 1:19-cv-01277, 2020 WL 3000472, at *2 (N.D. Ohio June 4, 2020). Moreover, the potential disruption to trial of a limited reopening is mitigated by the expedited deposition schedule ordered by the Court. (*See* Order Resetting Trial Date, ECF No. 251). The Court concludes that these factors outweigh the surprise to Defendants, to the extent that there was any, and the inadequacies of Plaintiffs' explanation for their untimely disclosure of Cagnazzi.

*Dean.* Neither party presents substantial evidence regarding Ben Dean, beyond the basic fact that he was first disclosed by Presidio as a potential witness on January 13, 2023. Nor was any evidence produced or testimony heard at the hearing about Dean. (*See generally* Evidentiary Hr'g Tr., ECF Nos. 236, 237) (mentioning Dean only in opening statements and closing arguments). There is little support, in other words, for concluding that the January 13 disclosure of Dean was timely or untimely. Two reasons, however, compel the Court to conclude that Plaintiffs should be permitted to call Dean at trial. First, Dean was mentioned in one of Plaintiffs' interrogatory responses in November 2022, thus indicating that there was "sufficient knowledge on the part of the other party" that Dean might be named a potential witness. *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (quoting Vance, 1999 WL 455435, at *5). This points in favor of finding the disclosure harmless even if it was untimely. Second, any potential prejudice is easily curable, by allowing Defendants to depose Dean during the same timeframe allotted for the depositions of Cagnazzi, *see supra*, and Dewey, *see infra*. Thus, even if the Court assumes without deciding that the disclosure of Dean was untimely, the untimeliness is nevertheless harmless.

*Dewey*. Similar considerations inform this Court's decision with respect to Jon Dewey, who is an account manager at Presidio that serves as the point person for Avita Health, one of the

14

Presidio customers at the heart of their allegations against Defendants. Defendants suggest that the centrality of the Avita Health account to Presidio's case should cut against Presidio, since Presidio has known from the beginning that it would require testimony from its employees who work on that account. Presidio explains that it had initially designated Mike Trautman, Dewey's former boss at Presidio, as a witness for that exact purpose, but required backup—in the form of Dewey—after Trautman left the company last fall. Although this Court is left with some lingering questions, Presidio's explanation is certainly plausible. Thus, the fifth *Howe* factor does not favor either party. The remaining *Howe* factors fall much the same as they do with respect to Dean: the surprise to Defendants of the late disclosure is outweighed by the curability of any harm, the importance of the testimony, and the lack of material disruption to trial.

Accordingly, this Court allows Presidio to rely on the testimony of Cagnazzi, Dean, and Dewey, in addition to the testimony of Filia and Raglow, which Defendants do not oppose, at trial. The testimony of these five individuals will be limited to the scope delineated in Presidio's January 13, 2023, Rule 26(e) disclosures. The remaining 20 witnesses disclosed by Plaintiffs on January 13 will not be permitted to testify at trial. Further, to cure any prejudice suffered by Defendants, discovery was reopened for the limited purpose of deposing Cagnazzi, Dean, and Dewey, subject to the deadline set forth in this Court's May 17, 2023, Order.

## IV. CONCLUSION

For the reasons stated more fully above, Defendants' Motion to Preclude (ECF No. 157) is **GRANTED IN PART and DENIED IN PART**. Plaintiffs are **PRECLUDED** from relying

15

on all witnesses first disclosed on January 13, 2023, except Robert Cagnazzi, Ben Dean, Jon Dewey, Justin Filia, and David Raglow.[2]

**IT IS SO ORDERED.**

          /s/ Algenon L. Marbley
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: August 11, 2023**

---

[2] The depositions of Cagnazzi, Dean, and Dewey, have since been taken. (*See* Stipulation, ECF No. 235).